UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

RAFFAELOUS J. WHITE                         CIVIL ACTION NO. 13-cv-2454

VERSUS                                      JUDGE FOOTE

N. BURL CAIN                                MAGISTRATE JUDGE HORNSBY

**REPORT AND RECOMMENDATION**

**Introduction; Abandoned Claims**

Raffaelous J. White ("Petitioner") was charged in Caddo Parish with distribution of cocaine. He waived his right to a jury trial. Two police officers and Petitioner testified, and the court found Petitioner guilty. He was adjudicated a fourth-felony offender and sentenced to life imprisonment. His conviction and sentence were affirmed on appeal. State v. White, 58 So.3d 493 (La. App. 2d Cir. 2011), writ denied, 64 So.3d 220 (La.). Petitioner next filed a post-conviction application. The state court denied the claims on the merits.

Petitioner then presented the four post-conviction claims to this court in this habeas corpus proceeding. His first two claims were that: (1) he did not knowingly waive his right to a jury trial and (2) the trial court erred in allowing the introduction of cocaine into evidence without a proper foundation. The State responded that Petitioner was not entitled to habeas relief on those claims because he had presented them only in terms of state law rather than the federal law that is relevant on habeas review. Petitioner filed a traversal (Doc. 11) and admitted that "[t]he State is correct," and he "request[ed] that he be allowed to

amend his pending § 2254 petition and abandon claims one and two." It is recommended that request be granted, so those claims need not be further addressed in this recommendation.

Petitioner's remaining claims are for ineffective assistance of counsel. He argues that trial counsel was ineffective when he (3) did not object to the introduction of cocaine into evidence, and (4) did not object to introduction of a crime lab report absent the testimony of the lab technician. For the reasons that follow, it is recommended that the petition be denied.

**Relevant Facts**

Cpl. Steve McKenna of the Shreveport Police Department testified that he had worked with the department for almost 10 years and had three years experience with street level narcotics, with several hundred cases under his belt. He was conducting an undercover buy-bust operation in June 2008 when he went to the Alpine Liquor Store near Lakeshore at Portland. He first gave money to a man who promised to bring him cocaine, but the man left and did not return. McKenna said that Petitioner then approached his car, and they began talking about the man who had left. Petitioner told McKenna that the man was either not going to return or would try to give him some "bunk" or counterfeit crack cocaine.

Petitioner got in the front passenger seat with McKenna. Petitioner told McKenna that he knew where he could buy crack. After waiting about 10 minutes on the other man, McKenna went to the other location, in the Queensborough area, based on directions given by Petitioner.

When they arrived, McKenna gave Petitioner $40. McKenna waited in the car, and Petitioner went to a nearby house. He returned a few minutes later and got back in the car. McKenna noticed that Petitioner had the drugs in his left hand, and as they drove away, McKenna took the drugs from Petitioner. As they crossed Jewella Avenue, Petitioner asked to be let out and to be given a piece of the crack that he had purchased. McKenna stopped the car, broke off a small piece of crack for Petitioner, and gave a predetermined signal to an arrest team that was tailing him and monitoring his conversation. Petitioner was arrested.

McKenna testified that he field tested the items purchased, and they were positive for a cocaine base. The prosecutor asked McKenna if he knew if the drugs had been turned in to the crime lab for further testing. McKenna said the case agent had turned them over, and McKenna had reviewed the report that showed the substance was positive for cocaine.

The prosecutor asked McKenna to identify Exhibit No. 1, being the bag and contents of three cut cocaine rocks. McKenna said two of the rocks were the ones placed in his hand, and the other was the small piece he pinched off for Petitioner. McKenna also identified an audio/video recording taken from inside the car, and it was played for the court. When Exhibits Nos. 1 and 2 were offered as evidence, defense counsel stated, "I have no objection to either, your honor." Tr. 161-80.

Shreveport police officer Chad Denham testified that he was the case agent and had been part of the arrest team. The team had followed McKenna and Petitioner from the liquor store to the purchase site and monitored their conversations. When they arrested Petitioner,

they found on him approximately a tenth of a gram of crack, commensurate with McKenna's description of what he had pinched off for Petitioner.

The prosecutor also asked Denham if he recognized the bag and contents admitted as Exhibit 1. Denham said it was the crack cocaine that was recovered from McKenna and Petitioner. The prosecutor asked if the cocaine was taken to the crime lab to be tested, and Denham said that it was. (He did not specify who delivered it for testing.) The prosecutor asked Denham if he knew the results of the test, and Denham said that the substance had tested positive for cocaine base. Tr. 186-94.

The State concluded its presentation by offering into evidence Exhibit No. 3, the crime lab report. The prosecutor stated that the offer was made pursuant to La. R.S. 15:499-501. Defense counsel stated, "No objection to No. 3." Tr. 196.

The State rested, and Petitioner took the stand. Petitioner admitted that everything Cpl. McKenna said was true, including that Petitioner purchased crack cocaine and asked for a piece of it in exchange for getting the dope. Petitioner's only defense was that he was merely a user of cocaine but never sold it. "I don't sell dope at all. I use dope." He also admitted to several prior convictions. Tr. 196-212.

During closing arguments, defense counsel conceded that from a "textbook" definition, "distribution may have occurred here." He emphasized that Petitioner was merely a user and did not try to negotiate a price or other advantage until after the transaction. He was merely a conduit for the officer's money to the actual distributor, and he did not act for the purpose of making money. Counsel argued that, in light of all the circumstances, the

court should find Petitioner guilty of the lesser offense of possession of cocaine. Tr. 213-214.

The trial judge read the definition of distribution of Schedule II CDS as defined by La. R.S. 40:967. He noted that Section 961 defines distribute to mean to deliver a controlled substance whether by physical delivery or other specified means. He found that Petitioner was guilty of distribution of Schedule II CDS, and he noted that defense counsel's arguments were more relevant to sentencing than guilt. Tr. 214-15.

**Ineffective Assistance of Counsel**

  **A. State Court Decisions; Habeas Standard**

Petitioner presents two claims of ineffective assistance of counsel. To prevail on such a claim, he must establish both that his counsel's performance fell below an objective standard of reasonableness and that, had counsel performed reasonably, there is a reasonable probability that the result in his case would have been different. Strickland v. Washington, 104 S.Ct. 2052, 2064 (1984).

The state courts did not spill much ink in addressing Petitioner's claims. The trial court summarized the claims and stated: "Defense counsel does not object to introduction of the evidence as well as the lab report, however, this court does not find that failure to object is tantamount to ineffective assistance of counsel and therefore said claims is (sic) denied." Tr. 517. The appellate court noted that an ineffective assistance of counsel claim had been presented. It resolved it by stating: "The writ is denied on the showing made." Tr. 587. The Supreme Court of Louisiana denied writs without comment. Tr. 667.

Petitioner's claim was adjudicated and denied on the merits by the state court, so 28 U.S.C. § 2254(d) directs that the question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether the determination was unreasonable, which is a substantially higher threshold. Schriro v. Landrigan, 127 S.Ct. 1933, 1939 ( 2007). The Strickland standard is a general standard, so a state court has even more latitude to reasonably determine that a defendant has not satisfied it. The federal court's review is thus "doubly deferential." Knowles v. Mirzayance,129 S.Ct. 1411, 1420 (2009).

"If this standard is difficult to meet, that is because it was meant to be." Harrington v. Richter, 131 S.Ct. 770, 786 (2011). Section 2254(d) "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings" and reaches only "extreme malfunctions" in the state criminal justice system. Id. Thus, "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id.

These demanding standards apply "even where there has been a summary denial." Cullen v. Pinholster, 131 S.Ct. 1388, 1402 (2011). A petitioner who challenges a state court's summary denial may meet his burden under the first prong of Section 2254(d) only by showing that there was "no reasonable basis" for the state court's decision. The federal habeas court must determine what arguments or theories could have supported the summary decision, and then it must ask whether it is possible fair-minded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court. Pinholster, 131 S.Ct. at 1402, citing Harrington v. Richter, 131 S.Ct. 770,

786 (2011). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Richter, quoting Yarborough v. Alvarado, 124 S.Ct. 2140 (2004).

### B.  No Objection to Introduction of Drugs

Petitioner argues that counsel was ineffective because he did not object to the admission of the drugs.  He urges that counsel should have pointed out the lack of detail of the chain of custody.  It is true that there is no testimony in the record regarding labeling, documentation, signatures, or other details of traditional chain of custody evidence for such items.  It may be that those details were not present, or it could be that they simply were not addressed in the testimony given the lack of any real dispute that Petitioner obtained cocaine for McKenna.

Counsel would have had to make his objection under Louisiana law, which provides that evidence can be admitted after properly being identified.  A sufficient foundation can be established when the evidence as a whole shows it is more probable than not that the object is one connected with the crime charged.  The identification can be accomplished through a chain of custody, by tracing the object from the time it was seized to the time it was offered in evidence.  But it can also be visual, through testimony. State v. Arita, 900 So.2d 37, 43 (La. App. 5th Cir. 2005).  Even if there is a lack of positive identification or perfect chain of custody, that often goes to the weight of the evidence rather than its admissibility.  The fact finder may determine as a factual matter whether the evidence is connected to the case. State v. Castro, 40 So.3d 1036, 1049 (La. App. 5th Cir. 2010).

Counsel could have raised an objection to the admissibility of the drugs, but it is unlikely the objection would have resulted in the exclusion of the evidence. Both police officers identified the bag of drugs as what they witnessed at the scene of the crime. Had an objection been raised, they likely would have been able to supplement their testimony with additional evidence to firm up the identification of the exhibit as what was seized after the arrest. It is, in reality, fairly unlikely that such an objection would have excluded the key evidence. Furthermore, Counsel need not object to the introduction of every item of evidence, and reasonable counsel facing busy dockets often forego the formalities that might be required or expected in some forums. Counsel did not have to make the objection in this setting to comply with the constitutional requirement of affording reasonably effective counsel. Accordingly, the state courts' rejection of this Strickland claim was not so incorrect as to be an objectively unreasonable application of the Strickland standard.

### C. Lab Report

Three months before trial, the State served the defense with a copy of the certified lab report from the crime lab and stated its intent to offer the report into evidence pursuant to La. R.S. 15:499-501. Tr. 28. At that time, the statutes provided that a defendant served with such notice could request a subpoena for the analyst who performed the testing and require that they appear at trial to testify and be cross examined. Otherwise, the court could receive the certificate in evidence as prima facie proof of the facts shown in it. The Supreme Court of Louisiana held, three years before this 2008 trial, that the statutes did not violate the Confrontation Clause. State v. Cunningham, 903 So.2d 1110 (La. 2005).

Those are the rules under which counsel was operating when he did not object to the admission of the lab report. Petitioner asserts that counsel allowed his Confrontation Clause rights to be violated by not objecting, but the law in effect at the time simply did not provide a basis for a valid objection. Furthermore, Petitioner does not articulate any cross examination or contrary evidence that might have questioned the results of the lab report had counsel subpoenaed the analyst.

The year after the trial, the Supreme Court decided Melendez-Diaz v. Massachusetts, 129 S.Ct. 2527 (2009), which struck down a state system that allowed admission of a lab report without an opportunity to cross-examine the analyst. The Court's opinion noted, however, that notice-and-demand statutes could satisfy Confrontation Clause rights. Melendez-Diaz, 129 S.Ct. at 2541. The Court also stated in Bullcoming v. New Mexico, 131 S.Ct. 2705, 2718 (2011) that notice-and-demand procedures in effect in many jurisdictions can render otherwise hearsay reports admissible while preserving a defendant's right to demand that the prosecution call the author of the report. Those decisions also noted that the parties quite often stipulate to the admission of the reports.

Louisiana has since amended its statute to place less of a burden on a defendant who wishes to require the analyst to testify, but the same basic procedure is in place. Federal district courts have rejected habeas claims that the admission of lab reports under the Louisiana system violated Confrontation Clause rights. See, e.g., Briggs v. Prince, 2015 WL 6738713 (E.D. La. 2015) and Ducre v. Cain, 2014 WL 2719172 *11-12 (E.D. La. 2014), COA denied, 14-CA-30811 (5th Cir. 2015). The Supreme Court of Louisiana has also

revisited the statutes that were in place at the time of this trial, and it held that they survived Melendez-Diaz.  State v. Simmons, 78 So.3d 743 (La. 2012).

Petitioner has not demonstrated that counsel allowed Petitioner's Confrontation Clause rights to be violated.  Counsel was acting under a statutory scheme that had and has been held constitutional by state and federal courts.  Counsel had the opportunity to require the lab analyst to testify, but the Confrontation Clause does not mandate that he make such a request every time a lab report is at issue.  The Supreme Court itself noted that counsel will, in the majority of cases, stipulate to admission of the report or that the substance is cocaine or other drug.  There was no obligation of counsel, to be considered effective, to subpoena the lab analyst unless there was some factual basis to question the reliability or validity of the test.  Petitioner has not pointed to any such evidence.  Accordingly, the state courts' decision to deny this Strickland claim was not objectively unreasonable.

Accordingly,

**IT IS RECOMMENDED** that Petitioner's petition for writ of habeas corpus be denied.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel

are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

An appeal may not be taken to the court of appeals from a final order in a proceeding under 28 U.S.C. § 2254 unless a circuit justice, circuit judge, or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c); F.R.A.P. 22(b). Rule 11 of the Rules Governing Section 2254 Proceedings for the U.S. District Courts requires the district court to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate may issue only if the applicant has made a substantial showing of the denial of a constitutional right. Section 2253(c)(2). A party may, within fourteen (14) days from the date of this Report and Recommendation, file a memorandum that sets forth arguments on whether a certificate of appealability should issue.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 13th day of July, 2016.

Mark L. Hornsby
U.S. Magistrate Judge